MARGARET F. SMITH, Respondent, v. DANIEL AUDE, Appellant.

St. Louis Court of Appeals, November 10, 1891.

Landlord and Tenant: SALE UNDER EXECUTION. A sale under execution of a lessor's title to land will not avoid a prior lease in the absence of evidence that the judgment, under which the execution was issued, was rendered before the lease was made.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Rassieur & Schnurmacher*, for appellant.

The sale of the landlord's title under a judgment or mortgage antedating the lease extinguished the lease and annihilated the rents reserved. *Simers v. Sallus*, 3 Denio, 214; *Duff v. Wilson*, 69 Pa. St. 316; *Lancashire v. Mason*, 75 N. C. 455; *Sampson v. Grimes*, 7 Blackf. 176; *Martin v. Martin*, 7 Md. 368.

*Jas. P. Maginn*, for respondent.

(1) A lessor enters into an implied covenant to keep the defendant in the quiet enjoyment of the premises during the term, and that is all he undertakes to do. So long as there is no breach of this covenant, the defendant is not released from the obligations of his lease. *Maider v. Carondelet*, 26 Mo. 112; *Hamilton v. Wright*, 28 Mo. 199. (2) Nothing but a release, surrender or eviction will absolve a tenant in whole, or in part, from the covenants in his lease. 1 Washburn, Real Prop. [3 Ed.] pp. 346, 361. (3) If a landlord sells the leased premises to another, the defendant is not thereby discharged of his obligation to pay rent to the vendor, unless the vendee give him notice that he claims the rent. *Gray v. Rogers*, 30 Mo. App. 258; *Green v. Sternberg*, 15 Mo. App. 35. (4) The marshal's sale under execution did not affect the respondent's actual possession of the premises, nor appellant's possession as her tenant. *May v. Luckett*, 48 Mo. 472; *Spalding v. Mayhall*, 27 Mo. 377; *Pentz v. Kuester*, 41 Mo. 447; *Higgins v. Turner*, 61 Mo. 250; *Kingman v. Abington*, 56 Mo. 46.

BIGGS, J.—On the first day of July, 1881, the plaintiff leased to the defendant for the period of ten years three vacant lots fronting seventy feet on Cass avenue. The lease stipulated for the payment of an annual rental of $150, payable in equal quarterly installments. As a further consideration for such letting the defendant covenanted to pay all taxes, whether general or special, assessed against the lots during the term. The record shows, and the plaintiff admits, that her title to the demised premises was, in November, 1881, divested by a sale under an execution issued upon a judgment against her in the United States circuit court for this district. The Metropolitan National Bank, of New York, purchased the property at the sale, and it received a deed therefor from the marshal of the court. After the purchase there was a verbal agreement between the bank and the plaintiff, that the plaintiff should receive the rents due under the lease during the continuation of certain litigation for the enforcement of certain mortgages on this and other property belonging to the plaintiff. Under this agreement, the plaintiff collected the rents from the defendant until October, 1888. There was no evidence in the case that the defendant knew of, or assented to, this agreement, but, on the contrary, he testified that he knew nothing of the sale, or the ownership of the property by the bank, until 1888. In August, 1888, after the defendant learned that the bank owned the property, he served a written notice on the plaintiff's agents that he would abandon the premises at the end of that quarter, which he did after tendering the possession to the plaintiff's agents. After the receipt of this notice the local agents of the bank notified defendant that the bank recognized the validity of the lease and that the plaintiff had authority to collect and receive the rents during the remainder of the term, and to enforce compliance with all covenants and agreements contained in the lease.

The plaintiff brings this action to recover the amount of rent alleged to be due under the lease, to-wit, from October, 1888, to the date of the institution of the suit, and also to recover the amount of general taxes assessed against the property since its abandonment, and which the plaintiff claims to have paid ; and also to recover the amount paid by the plaintiff in satisfaction of a judgment rendered against the property on a special tax bill for the reconstruction of Cass avenue in front of the premises. The defense was predicated on the aforementioned facts, which were set forth in the defendant's answer. The cause was submitted to the court without a jury, and the finding and judgment were for the plaintiff for the amounts sued for.

The defendant asked the court to instruct that, under the pleadings and evidence, the plaintiff could not recover. This instruction was refused, and this action of the court presents the only question for review on this appeal.

If the lease in question was a valid contract of renting as to the Metropolitan National Bank as purchaser, then the defense here made is not available.

We understand the rule to be that, if the lease or contract antedates any right, interest or title acquired by the purchaser by means of his conveyance, then the purchase is in subordination to the lease. This is true, whether the conveyance be voluntary or *in invitum.* In other words the extinguishment of the lessor's title will not avoid the lease either as to the tenant or purchaser. The sale merely operates as a transfer of the lessor's title and of his rights under the lease to the purchaser. The purchaser may exhibit to the tenant his deed, and demand of him that he attorn and pay to him the subsequently accrued rents. If the tenant refuses, the purchaser may oust him by proper proceedings. *Gunn v. Sinclair*, 52 Mo. 327; *May v. Luckett*, 54 Mo. 437; *Clampitt v. Kelley*, 62 Mo. 571;

*Lindenbower v. Bentley*, 86 Mo. 515 ; *Higgins v. Turner*, 61 Mo. 249 ; *Barclay v. Pickles*, 38 Mo. 143 ; *Stevenson v. Hancock*, 72 Mo. 612 ; *Winfrey v. Work*, 75 Mo. 55 ; *Pentz v. Kuester*, 41 Mo. 447 ; R. S. 1889, secs. 6398, 6397, 6387. But if, in such a case, the purchaser fails to demand of the lessee the rents, or fails to ask him to attorn, the latter's obligation to pay rents to the lessor remains, and he will be protected in such payment until notified by the purchaser not to pay. *Gray v. Rogers*, 30 Mo. 261.

But the defendant's counsel argue that a different rule of law is applicable in this case. It is asserted as a proposition of law that, when a lease or contract of renting is *subsequent* to a judgment against the lessor, which judgment is a *lien* on the demised premises, a purchaser under an execution to enforce such a judgment would occupy a very different relation to the tenant under such a lease. This position is supported by the argument, that such a sale would annihilate the lease, and would leave no privity either of contract or estate between the tenant and the purchaser, and that it would necessarily follow that the tenant would be at liberty to abandon the premises if he saw proper. There is a great deal of force in the argument, and very respectable authorities support it. But it is useless to discuss the question, because the record does not disclose the fact that the judgment *was a lien* on the demised premises at the date of the lease. The defendant's answer contained the single averment that, in November, 1881, the property was sold under an execution issued upon a judgment rendered against the plaintiff in the United States circuit court for this district. But we find nothing tending to show the date of the judgment. If it were permissible for us to draw the inference, that the judgment must necessarily have antedated the lease, by reason of the sale at the next term of the court after the date of the lease, then, before we could decide that the judgment was a lien, we would

be compelled to infer the further fact, that the judgment was rendered within three years next preceding the date of the lease (R. S. 1889, sec. 6012), and perhaps that an abstract of the judgment was registered with the clerk of the circuit court of the city of St. Louis at the date of the lease. R. S. 1889, sec. 6057. The lien of a judgment is a creature of the statute. At common law it was the delivery of an execution to the sheriff that created a lien. Therefore, in the absence of a law of congress on the subject, we apprehend that, if judgments rendered in the United States courts are liens at all, such liens must exist by virtue of the state law. If so, then such judgment liens stand on the same footing as the liens of judgments in the state courts, and are subject to the same restrictions and limitations. *Massingill v. Downs,* 7 How. 760; R. S. U. S. 1878, sec. 967. This, we think, makes it clear that the defendant failed to establish by his proof the case he argues in his brief. In other words, we are of the opinion that the defendant's evidence did not amount to a defense to the plaintiff's action.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It will be so ordered.